UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF MICHIGAN
SOUTHERN DIVISION


ROBERT WHITE,

    Plaintiff,                                                     Hon. Paul L. Maloney

v.                                                             Case No. 1:12-CV-835

COMMISSIONER OF SOCIAL
SECURITY,

    Defendant.
_____/

## REPORT AND RECOMMENDATION

This is an action pursuant to Section 205(g) of the Social Security Act, 42 U.S.C. § 405(g), to review a final decision of the Commissioner of Social Security denying Plaintiff's claim for Supplemental Security Income (SSI) under Title XVI of the Social Security Act. Section 405(g) limits the Court to a review of the administrative record, and provides that if the Commissioner's decision is supported by substantial evidence, it shall be conclusive. Pursuant to 28 U.S.C. § 636(b)(1)(B), authorizing United States Magistrate Judges to submit proposed findings of fact and recommendations for disposition of social security appeals, the undersigned recommends that the Commissioner's decision be **affirmed**.


## STANDARD OF REVIEW

The Court's jurisdiction is confined to a review of the Commissioner's decision and of the record made in the administrative hearing process. *See Willbanks v. Sec'y of Health and Human Services*, 847 F.2d 301, 303 (6th Cir. 1988). The scope of judicial review in a social security

case is limited to determining whether the Commissioner applied the proper legal standards in making her decision and whether there exists in the record substantial evidence supporting that decision. *See Brainard v. Sec'y of Health and Human Services*, 889 F.2d 679, 681 (6th Cir. 1989).

The Court may not conduct a de novo review of the case, resolve evidentiary conflicts, or decide questions of credibility. *See Garner v. Heckler*, 745 F.2d 383, 387 (6th Cir. 1984). It is the Commissioner who is charged with finding the facts relevant to an application for disability benefits, and her findings are conclusive provided they are supported by substantial evidence. *See* 42 U.S.C. § 405(g). Substantial evidence is more than a scintilla, but less than a preponderance. *See Cohen v. Sec'y of Dep't of Health and Human Services*, 964 F.2d 524, 528 (6th Cir. 1992) (citations omitted). It is such relevant evidence as a reasonable mind might accept as adequate to support a conclusion. *See Richardson v. Perales*, 402 U.S. 389, 401 (1971); *Bogle v. Sullivan*, 998 F.2d 342, 347 (6th Cir. 1993). In determining the substantiality of the evidence, the Court must consider the evidence on the record as a whole and take into account whatever in the record fairly detracts from its weight. *See Richardson v. Sec'y of Health and Human Services*, 735 F.2d 962, 963 (6th Cir. 1984).

As has been widely recognized, the substantial evidence standard presupposes the existence of a zone within which the decision maker can properly rule either way, without judicial interference. *See Mullen v. Bowen*, 800 F.2d 535, 545 (6th Cir. 1986) (citation omitted). This standard affords to the administrative decision maker considerable latitude, and indicates that a decision supported by substantial evidence will not be reversed simply because the evidence would have supported a contrary decision. *See Bogle*, 998 F.2d at 347; *Mullen*, 800 F.2d at 545.

## PROCEDURAL POSTURE

Plaintiff was 44 years of age on his alleged disability onset date. (Tr. 162). He possesses a tenth grade education and worked previously as a car detailer. (Tr. 19, 173-74, 194).

Plaintiff applied for benefits on July 28, 2008, alleging that he had been disabled since June 1, 2002, due to lower extremity impairments, asthma, emphysema, and a gunshot wound. (Tr. 162-64, 190). Plaintiff's application was denied, after which time he requested a hearing before an Administrative Law Judge (ALJ). (Tr. 77-157). On January 3, 2011, Plaintiff appeared before ALJ Neil Sullivan with testimony being offered by Plaintiff and vocational expert, Lee Knutson. (Tr. 32-71). In a written decision dated January 19, 2011, the ALJ determined that Plaintiff was not disabled. (Tr. 13-20). The Appeals Council declined to review the ALJ's determination, rendering it the Commissioner's final decision in the matter. (Tr. 1-5). Plaintiff subsequently initiated this action pursuant to 42 U.S.C. § 405(g), seeking judicial review of the ALJ's decision.

## RELEVANT MEDICAL HISTORY

On June 22, 2008, Plaintiff reported to the emergency room complaining of chest pain. (Tr. 218-19). The results of cardiovascular, neuromuscular, and vascular testing revealed no abnormality. (Tr. 218). X-rays of Plaintiff's chest "did not show any acute process." (Tr. 219). Plaintiff was diagnosed with acute costochondritis.[1] (Tr. 219). Plaintiff was provided with medication and discharged home in "stable and satisfactory" condition. (Tr. 219). On July 2, 2008,

---

[1] Costochondritis is "an inflammation of the cartilage that connects a rib to the breastbone." *See* Costochondritis, available at http://www.mayoclinic.com/health/costochondritis/DS00626 (last visited on December 10, 2013).

3

Plaintiff participated in a CT examination of his chest the results of which revealed "pulmonary emphysema." (Tr. 278).

On September 11, 2008, Plaintiff participated in a consultive examination conducted by Dr. Jared Griffith. (Tr. 226-28). Plaintiff reported that he was recently diagnosed with emphysema. (Tr. 226). Plaintiff also reported that he suffered a gunshot wound to his right leg approximately 15 years previous after which he developed "arthritis within the right knee." (Tr. 226). Plaintiff reported that he can stand for 25 minutes, but experiences shortness of breath after walking approximately 25 feet. (Tr. 226). Dr. Griffith observed that Plaintiff used a cane "for assistance in ambulation" and walked with a "mild right-sided limp." (Tr. 227). The doctor noted, however, that Plaintiff's cane "did not appear to be necessary during today's examination, for short distances, but on uneven terrain, I feel [use of a cane] would be of benefit to [Plaintiff]." (Tr. 228).

A neurological examination revealed intact motor and sensory functioning, intact and symmetrical reflexes, and no evidence of disorientation. (Tr. 227). A musculoskeletal examination revealed the following:

> There is evidence of prior gunshot wound with entry and exit scars noted above the lateral aspect of the right knee. There is a positive Apley's compression test of the right knee.[2] Drawer signs[3] of bilateral knees are negative. There is no joint effusion. The right knee demonstrates range of motion. There is positive tenderness to palpation about the plantar aspects of the feet bilaterally. There is full range of motion of bilateral ankles. The patient has mild weakness noted within the right hip flexors and flexors and extensors

---

[2] Apley's compression test is designed to evaluate difficulties with the meniscus, the "shock-absorbing cartilage" of the knee. *See* Meniscus Tears, available at http://www.nlm.nih.gov/medlineplus/ency/article/001071.htm (last visited on December 10, 2013).

[3] The anterior drawer test is a method by which to assess "one-plane anterior instability" of the knee. *See* Anterior Drawer Test, available at http://www.pthaven.com/page/show/102189-anterior-drawer-test-two-angles- (last visited on December 10, 2013).

>    of the knee gauged at 4+/5 in relation to the other muscles. The
>    patient has no difficulty getting on and off the examination table. No
>    difficulty with heel walking, but moderate difficulty with toe walking
>    and mild difficulty with squatting. The hands have full dexterity and
>    grip.

(Tr. 227).

X-rays of Plaintiff's right knee, taken December 30, 2009, revealed "mild osteoarthritic changes with small joint effusion," but "no fracture." (Tr. 251). X-rays of Plaintiff's hips, taken the same day, revealed osteoarthritic changes but no evidence of fracture. (Tr. 250).

X-rays of Plaintiff's chest, taken February 7, 2010, revealed "no active cardiopulmonary disease." (Tr. 260). X-rays of Plaintiff's chest, taken on April 18, 2010, revealed "no active cardiopulmonary disease" and "normal heart." (Tr. 269).

On September 21, 2010, Dr. Todd Welton authored a "To Whom it Concerns" letter in which he stated that Plaintiff was experiencing "neuropathy and chronic lower back pain. . .related to a vitamin B-12 deficiency." (Tr. 292). The doctor reported that "it would be very difficult for [Plaintiff] to work in any type of capacity due to his necessity to sit or lay frequently." (Tr. 292). The doctor further reported that Plaintiff "would also likely miss work more than 15 days per month due to pain." (Tr. 292).

## **ANALYSIS OF THE ALJ'S DECISION**

The social security regulations articulate a five-step sequential process for evaluating disability. *See* 20 C.F.R. §§ 404.1520(a-f), 416.920(a-f).[4] If the Commissioner can make a

---

[4]1.  An individual who is working and engaging in substantial gainful activity will not be found to be "disabled" regardless of medical findings (20 C.F.R. 404.1520(b));

2.  An individual who does not have a "severe impairment" will not be found "disabled" (20 C.F.R. 404.1520(c));

5

dispositive finding at any point in the review, no further finding is required. *See* 20 C.F.R. §§ 404.1520(a), 416.920(a). The regulations also provide that if a claimant suffers from a nonexertional impairment as well as an exertional impairment, both are considered in determining her residual functional capacity. *See* 20 C.F.R. §§ 404.1545, 416.945.

The burden of establishing the right to benefits rests squarely on Plaintiff's shoulders, and he can satisfy his burden by demonstrating that his impairments are so severe that he is unable to perform his previous work, and cannot, considering his age, education, and work experience, perform any other substantial gainful employment existing in significant numbers in the national economy. *See* 42 U.S.C. § 423(d)(2)(A); *Cohen*, 964 F.2d at 528. While the burden of proof shifts to the Commissioner at step five of the sequential evaluation process, Plaintiff bears the burden of proof through step four of the procedure, the point at which his residual functioning capacity (RFC) is determined. *See Bowen v. Yuckert*, 482 U.S. 137, 146 n.5 (1987); *Walters v. Comm'r of Soc. Sec.*, 127 F.3d 525, 528 (6th Cir. 1997) (ALJ determines RFC at step four, at which point claimant bears the burden of proof).

The ALJ determined that Plaintiff suffers from (1) emphysema; (2) residual effects from a gunshot wound to the lower extremity; and (3) a back impairment, severe impairments that whether considered alone or in combination with other impairments, failed to satisfy the

---

3. If an individual is not working and is suffering from a severe impairment which meets the duration requirement and which "meets or equals" a listed impairment in Appendix 1 of Subpart P of Regulations No. 4, a finding of "disabled" will be made without consideration of vocational factors (20 C.F.R. 404.1520(d));

4. If an individual is capable of performing work he or she has done in the past, a finding of "not disabled" must be made (20 C.F.R. 404.1520(e));

5. If an individual's impairment is so severe as to preclude the performance of past work, other factors including age, education, past work experience, and residual functional capacity must be considered to determine if other work can be performed (20 C.F.R. 404.1520(f)).

requirements of any impairment identified in the Listing of Impairments detailed in 20 C.F.R., Part 404, Subpart P, Appendix 1. (Tr. 15-16). The ALJ next determined that Plaintiff retained the capacity to perform the full range of light work.[5] (Tr. 16). The ALJ concluded that Plaintiff could not perform his past relevant work, at which point the burden of proof shifted to the Commissioner to establish by substantial evidence that a significant number of jobs exist in the national economy which Plaintiff could perform, his limitations notwithstanding. *See Richardson*, 735 F.2d at 964.

At this stage of the analysis, the ALJ relied on the medical-vocational guidelines. The medical-vocational guidelines, also known as the "grids," consider four factors relevant to a particular claimant's employability: (1) residual functional capacity, (2) age, (3) education, and (4) work experience. 20 C.F.R., Part 404, Subpart P, Appendix 2. Social Security regulations provide that "[w]here the findings of fact made with respect to a particular individual's vocational factors and residual functional capacity coincide with all the criteria of a particular rule, the rule directs a conclusion as to whether the individual is or is not disabled." 20 C.F.R., Part 404, Subpart P, Appendix 2, § 200.00. Specifically, the ALJ relied on section 202.10 of the medical-vocational guidelines which provides that a person of Plaintiff's age, education, work experience, and RFC, who is capable of performing the full range of light work is "not disabled." 20 C.F.R., Part 404,

---

[5] Light work involves lifting "no more than 20 pounds at a time with frequent lifting or carrying of objects weighing up to 10 pounds." 20 C.F.R. § 404.1567. Furthermore, work is considered "light" when it involves "a good deal of walking or standing," defined as "approximately 6 hours of an 8-hour workday." 20 C.F.R. § 404.1567; Titles II and XVI: Determining Capability to do Other Work - the Medical-Vocational Rules of Appendix 2, SSR 83-10, 1983 WL 31251 at *6 (S.S.A., 1983); *Van Winkle v. Commissioner of Social Security*, 29 Fed. Appx. 353, 357 (6th Cir., Feb. 6, 2002).

Subpart P, Appendix 2, § 202.10.[6] The ALJ concluded, therefore, that Plaintiff was not entitled to disability benefits.

I.        **The ALJ Properly Evaluated the Medical Evidence**

As noted above, Dr. Welton reported that "it would be very difficult for [Plaintiff] to work in any type of capacity due to his necessity to sit or lay frequently." The doctor also stated that Plaintiff "would also likely miss work more than 15 days per month due to pain." The ALJ accorded "little weight" to Dr. Welton's opinion. Plaintiff argues that because Dr. Welton was his treating physician, the ALJ was required to afford controlling weight to his opinion.

The treating physician doctrine recognizes that medical professionals who have a long history of caring for a claimant and his maladies generally possess significant insight into his medical condition. *See Barker v. Shalala*, 40 F.3d 789, 794 (6th Cir. 1994). An ALJ must, therefore, "give the opinion of a treating source controlling weight if he finds the opinion 'well-supported by medically acceptable clinical and laboratory diagnostic techniques' and 'not inconsistent with the other substantial evidence in [the] case record.'" *Wilson v. Commissioner of Social Security*, 378 F.3d 541, 544 (6th Cir. 2004).

Such deference is appropriate, however, only where the particular opinion "is based upon sufficient medical data." *Miller v. Sec'y of Health and Human Services*, 1991 WL 229979 at

---

[6] The vocational expert testified that there existed approximately 58,900 jobs in the state of Indiana, and approximately 1.2 million jobs in the national economy, which a person with Plaintiff's RFC could perform. (Tr. 63-65). This represents a significant number of jobs. *See Born v. Sec'y of Health and Human Services*, 923 F.2d 1168, 1174 (6th Cir. 1990); *Hall v. Bowen*, 837 F.2d 272, 274 (6th Cir. 1988); *Martin v. Commissioner of Social Security*, 170 Fed. Appx. 369, 374 (6th Cir., Mar. 1, 2006). The vocational expert further testified that there existed approximately 16,900 jobs in the state of Indiana, and approximately 498,000 jobs in the national economy, which Plaintiff could perform if he able to perform only a limited range of light work. (Tr. 65-67). This likewise represents a significant number of jobs. *See Born*, 923 F.2d at 1174; *Hall*, 837 F.2d at 274; *Martin*, 170 Fed. Appx. at 374.

8

*2 (6th Cir., Nov. 7, 1991) (citing *Shavers v. Sec'y of Health and Human Services*, 839 F.2d 232, 235 n.1 (6th Cir. 1987)). The ALJ may reject the opinion of a treating physician where such is unsupported by the medical record, merely states a conclusion, or is contradicted by substantial medical evidence. *See Cohen*, 964 F.2d at 528; *Miller v. Sec'y of Health and Human Services*, 1991 WL 229979 at *2 (6th Cir., Nov. 7, 1991) (citing *Shavers v. Sec'y of Health and Human Services*, 839 F.2d 232, 235 n.1 (6th Cir. 1987)); *Cutlip v. Sec'y of Health and Human Services*, 25 F.3d 284, 286-87 (6th Cir. 1994).

If an ALJ accords less than controlling weight to a treating source's opinion, the ALJ must "give good reasons" for doing so. *Wilson*, 378 F.3d at 544. In articulating such reasons, the ALJ must consider the following factors: (1) length of the treatment relationship and frequency of the examination, (2) nature and extent of the treatment relationship, (3) supportability of the opinion, (4) consistency of the opinion with the record as a whole, (5) the specialization of the treating source, and (6) other relevant factors. *See* 20 C.F.R. §§ 404.1527, 416.927; *see also*, *Wilson*, 378 F.3d at 544. The ALJ is not required, however, to explicitly discuss each of these factors. *See, e.g., Oldham v. Astrue*, 509 F.3d 1254, 1258 (10th Cir. 2007); *Undheim v. Barnhart*, 214 Fed. Appx. 448, 450 (5th Cir., Jan. 19, 2007). Instead, the record must reflect that the ALJ considered those factors relevant to her assessment. *See Oldham*, 509 F.3d at 1258; *Undheim*, 214 Fed. Appx. at 450.

In articulating his rationale for discounting Dr. Welton's opinion, the ALJ noted that the doctor had treated Plaintiff for less than three months before opining that he was incapable of working. (Tr. 18, 292). The length of time that a particular physician has been treating a patient prior to rendering an opinion is a relevant consideration. *See Kornecky v. Commissioner of Social Security*, 167 Fed. Appx. 496, 506-07 (6th Cir. 2006). As the ALJ further observed, "there has been

9

no medical testing which supports Dr. Welton's opinion" and "Dr. Welton's opinion is not consistent with the objective medical evidence." (Tr. 18). Dr. Welton's letter makes clear that his opinion is based primarily (if not exclusively) on Plaintiff's subjective allegations. (Tr. 292). In this respect, the Court notes that the ALJ found Plaintiff to be less than credible, a determination which Plaintiff has not challenged on appeal. (Tr. 16-17). The ALJ further noted that to the extent that Dr. Welton opined simply that Plaintiff was incapable of working (as opposed to articulating a specific functional limitation), such was entitled to no deference because "the determination of disability is reserved for the commissioner." (Tr. 18). This is certainly an accurate statement of the law. *See* 20 C.F.R. § 416.927(e)(1). In sum, the ALJ's conclusion to afford less than controlling weight to Dr. Welton's opinion is supported by substantial evidence.

**II.        The ALJ Properly Assessed Plaintiff's RFC**

As Plaintiff correctly notes, Social Security Ruling 96-8p provides that in determining a claimant's RFC, the ALJ must "assess [the claimant's] work-related abilities on a function-by-function basis." Titles II and XVI: Assessing Residual Functional Capacity in Initial Claims, SSR 96-8p, 1996 WL 374184 at *1 (S.S.R., July 2, 1996). Plaintiff asserts that he is entitled to relief because the ALJ, in assessing his residual functional capacity, failed to perform a "function-by-function assessment of [his] ability to work."

As the Sixth Circuit has recognized, while a "function-by-function analysis is desirable, SSR 96-8p does not require ALJs to produce such a detailed statement in writing." *Delgado v. Comm'r of Soc. Sec.*, 30 Fed. Appx. 542, 547 (6th Cir., Mar. 4, 2002) (citation omitted). Rather, "the ALJ need only articulate how the evidence in the record supports the RFC

10

determination, discuss the claimant's ability to perform sustained work-related activities, and explain the resolution of any inconsistencies in the record." *Id.* (citation omitted), *see also*, *Rudd v. Commissioner of Social Security*, 2013 WL 4767020 at *9 (6th Cir., Sept. 5, 2013) (SSR 96-8p merely requires the ALJ to "address a claimant's exertional and nonexertional capacities and also describe how the evidence supports her conclusions"). The ALJ discussed at length the incredibly scant evidence of record and how such supported his RFC determination. (Tr. 15-19). Accordingly, this argument is rejected.

## CONCLUSION

For the reasons articulated herein, the undersigned concludes that the ALJ's decision adheres to the proper legal standards and is supported by substantial evidence. Accordingly, it is recommended that the Commissioner's decision be **affirmed**.

OBJECTIONS to this report and recommendation must be filed with the Clerk of Court within fourteen (14) days of the date of service of this notice. 28 U.S.C. § 636(b)(1)(C). Failure to file objections within such time waives the right to appeal the District Court's order. *See Thomas v. Arn*, 474 U.S. 140 (1985); *United States v. Walters*, 638 F.2d 947 (6th Cir. 1981).

Respectfully submitted,

Date: December 18, 2013      /s/ Ellen S. Carmody
ELLEN S. CARMODY
United States Magistrate Judge